# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

HENRY D. MCKNIGHT, JR.,

    Plaintiff,

v.

CITY OF TOPEKA, KANSAS, et al.,

    Defendants.

Case No. 19-2353-DDC-GEB

## MEMORANDUM AND ORDER

Plaintiff Henry D. McKnight, Jr. brings this lawsuit under 42 U.S.C. § 1983, asserting that Topeka Police Department ("TPD") officers violated his constitutional rights by arresting him without probable cause. Plaintiff's lawsuit names three defendants: (1) the City of Topeka, Kansas, (2) TPD Officer Brandon Uhlrig, and (3) TPD Officer Zachary Goodman. All three defendants have filed a Motion to Dismiss plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6), for failing to state a claim for relief.[1] Doc. 12. Plaintiff has filed a Response, opposing defendants' motion. Doc. 16. And, defendants have filed a Reply. Doc. 17. For reasons explained below, the court grants defendants' Motion to Dismiss in part and denies it in part.

---

[1] Defendants filed their Motion to Dismiss (Doc. 12) about three months after they filed their Answer (Doc. 4). Rule 12(b)(6) requires a party to file a motion asserting a failure to state a claim defense "before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b)(6). Since defendants filed their Motion to Dismiss after filing their Answer, the court construes their motion as one made under Rule 12(c) for judgment on the pleadings. *See* Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."); *see also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002) (explaining that a motion filed after an answer "should generally be treated as a motion for judgment on the pleadings" and not a Rule 12(b)(6) motion). But, in the end, this is a distinction without material difference because courts evaluate a Rule 12(c) motion under the same standard that governs a Rule 12(b)(6) motion to dismiss. *Jacobsen*, 287 F.3d at 941 n.2 (noting that the court's "decision would be the same whether considered as a 12(b)(6) motion or a 12(c) motion").

### I. Factual Background

The following facts come from plaintiff's Complaint (Doc. 1). The court accepts these facts as true and views them in the light most favorable to plaintiff. *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) ("We accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff]." (citation and internal quotation marks omitted)).

In the early morning hours of Christmas Eve 2016, plaintiff was sleeping outside the front door of a restaurant in Topeka, Kansas. Around 4:00 a.m., TPD officers responded to an alarm at the restaurant. But the officers quickly left the scene to respond to another, unrelated call that took priority over the alarm call. Officers returned to the restaurant about 30 minutes later. Upon their return, Officer Brandon Uhlrig approached plaintiff, who was still sleeping, and announced himself as a TPD officer. Officer Uhlrig shined a flashlight at plaintiff and said, "Topeka Police." Plaintiff woke up, and Officer Uhlrig asked him to stand up. Officer Uhlrig saw that plaintiff had a difficult time getting off of the ground. He noticed plaintiff's arms were inside his sleeves making it difficult for him to balance himself. Officer Uhlrig offered to call someone to pick up plaintiff. Plaintiff declined the offer. Officer Uhlrig and Officer Zachary Goodman would not allow plaintiff to leave the area. Plaintiff tried to walk away, but the officers ordered him to sit down. Plaintiff complied with the order, and he sat down.

The officers investigated the restaurant's surroundings, and they discovered a door handle on the exterior patio door was broken off or missing. Also, the officers discovered a black pistol with an empty magazine on the ground near the broken door handle. The officers never connected plaintiff to the broken door handle or to the pistol. The officers patted down plaintiff

for weapons, but they found no weapons on him. The officers continued to detain plaintiff by ordering him to sit down. Plaintiff was not free to leave the scene.

Officer Uhlrig turned off his body recording device to consult with a supervising officer who wasn't present at the scene. According to Officer Uhlrig, the TPD has adopted a policy or practice where officers turn off their recording devices (Axon body cameras) when consulting with a supervisor. Officer Uhlrig and other TPD officers regularly follow this policy.

After Officer Uhlrig's discussion with his supervisor, he arrested plaintiff for "lurking and prowling" in violation of Topeka Municipal Code § 9.45.070. Officer Uhlrig placed plaintiff in handcuffs and conducted a search incident to the arrest. During this search, the officers found a plastic bag in plaintiff's pocket that contained six bullets. Later, the officers learned that plaintiff had a prior felony conviction.

As a result of the search, plaintiff was indicted in the United States District Court for the District of Kansas for violating 18 U.S.C. §§ 922(g) and 924(a)(2). *See* Indictment, *United States v. McKnight*, No. 17-cr-40020-DDC-1 (D. Kan. Mar. 8, 2017), ECF No. 1. These statutes prohibit a felon from possessing ammunition. On August 29, 2017, in plaintiff's criminal case, the court—the undersigned judge was assigned to the case—received evidence and heard argument on plaintiff's motion to suppress the evidence the TPD officers had discovered incident to his arrest. On September 22, 2017, the court denied the motion to suppress the evidence and set the case for trial. After the court's ruling on the suppression motion, plaintiff entered a conditional plea of guilty to one count of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g). As part of the plea agreement, plaintiff reserved the right to appeal the district court's decision denying his motion to suppress. The court later sentenced plaintiff to 37 months' imprisonment and 3 years of supervised release.

Plaintiff then appealed his conviction to the Tenth Circuit Court of Appeals. After plaintiff filed his appellate brief, the government filed a motion with the Circuit asking it to remand the case to the district court. The government's motion conceded that TPD officers lacked probable cause to arrest plaintiff, and thus, the officers had no legal justification for their search incident to arrest. Also, the government agreed with plaintiff that the Tenth Circuit should reverse the district court's order denying plaintiff's motion to suppress. The Tenth Circuit granted the government's motion to remand for further proceedings on the motion to suppress.

On January 4, 2019, the court granted the government's motion to dismiss the Indictment against plaintiff. After spending 19 months in federal custody, plaintiff was released on January 7, 2019.

**II.     Legal Standard**

"A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *See Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must assume that the factual allegations in the complaint are true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). But the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Also, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

For a complaint to survive a motion to dismiss under Rule 12(b)(6), the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

### III. Analysis

Defendants contend that plaintiff's Complaint fails to state a plausible claim for relief for two reasons. *First*, defendants argue that the statute of limitations bars plaintiff's § 1983 claims. *Second*, defendants assert, the Complaint fails to allege facts capable of supporting a plausible finding or inference that the individual TPD officers unreasonably extended plaintiff's detention. The court addresses each argument, separately, below.

#### A. Statute of Limitations

Defendants argue that plaintiff's § 1983 claims are time-barred. Plaintiff's Complaint alleges that defendants violated his Fourth and Fourteenth Amendment rights when TPD officers arrested him without probable cause on December 24, 2016. Doc. 1 at 5, 7 (Compl. ¶¶ 41, 53). Defendants argue that plaintiff's § 1983 claims are governed by a two-year statute of limitations that began to accrue when TPD officers arrested plaintiff. Doc. 13 at 5–7. Plaintiff filed his Complaint in this lawsuit on June 28, 2019. Doc. 1. Because plaintiff filed his Complaint more

5

than two years after his alleged unlawful arrest, defendants argue that the statute of limitations bars plaintiff's § 1983 claims.

Plaintiff responds, arguing that defendants misunderstand when his § 1983 claims began to accrue. Plaintiff agrees with defendants that his § 1983 claims are governed by a two-year statute of limitations. The statute of limitations for § 1983 claims "is drawn from the personal-injury statute of the state in which the federal district court sits." *Mondragón v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (citations omitted). In Kansas, the statute of limitations for personal injury claims is two years. Kan. Stat. Ann. § 60-513(a)(4); *see also Eikenberry v. Seward Cty., Kan.*, 734 F. App'x 572, 575 (10th Cir. 2018). So, the court applies Kansas's two-year statute of limitations to plaintiff's § 1983 claims and turns to the gist of the real disagreement here—when that two-year clock started to run.

The court must apply federal law to "determine[ ] the date on which the claim accrues and the limitations period starts to run." *Mondragón*, 519 F.3d at 1082 (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). Plaintiff argues that he has filed timely § 1983 claims against defendants based on his false imprisonment and the malicious prosecution waged against him.

For his false imprisonment claims under § 1983, plaintiff argues that the Tenth Circuit, citing the Supreme Court, has held: "[T]he statute of limitations for a Fourth Amendment claim for false arrest or imprisonment 'begin[s] to run . . . when the alleged false imprisonment ends.'" *Id.* (quoting *Wallace*, 549 U.S. at 389). The Tenth Circuit has defined the moment when a false imprisonment ends as either: (1) when "the plaintiff is released[,]" or (2) when the "legal process is instituted justifying that imprisonment." *Id.* at 1083. Plaintiff argues that his § 1983 claims for false imprisonment violating the Fourth Amendment began to accrue on September 22, 2017—the date when the court denied his motion to suppress and set his case for trial.

6

Plaintiff argues that, on this date, the legal process justifying his false imprisonment was instituted. And, plaintiff contends, he timely filed this lawsuit on June 28, 2019—less than two years later. For his malicious prosecution theory, plaintiff argues that the statute of limitations began to accrue on January 4, 2019, when the court granted the motion to dismiss the Indictment against plaintiff.

Defendants' Reply doesn't respond to plaintiff's statute of limitations arguments. Instead, defendants' Reply abandons their statute of limitations defense and only argues that plaintiff's Complaint fails to state a claim. *See generally* Doc. 17. Thus, it appears that defendants concede that plaintiff has filed his § 1983 claims in a timely fashion.

The court agrees that plaintiff has filed timely § 1983 claims based on his malicious prosecution theory under the Fourth and Fourteenth Amendments. But, the court doesn't agree with plaintiff's analysis of the accrual date for his false imprisonment-based Fourth Amendment claims.

Our Circuit has explained that "a plaintiff who claims that the government unconstitutionally imprisoned him has at least two potential constitutional claims." *Mondragón*, 519 F.3d at 1082. One claim arises under the Fourth Amendment, and the other claim arises under the Fourteenth Amendment's Due Process Clause. *Id.* ("'The initial seizure is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, [the] constitutional analysis shifts to the Due Process Clause.'" (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1285–86 (10th Cir. 2004))).

According to the Tenth Circuit, the difference between the two claims is this:

If [plaintiff] has been imprisoned without legal process he has a claim under the Fourth Amendment analogous to a tort claim for false arrest or false imprisonment. If [plaintiff] has been imprisoned pursuant to legal but wrongful process, he has a

7

claim under the procedural component of the Fourteenth Amendment's Due
Process Clause analogous to a tort claim for malicious prosecution.

*Id.*[2] The Tenth Circuit also has explained when each type of claim accrues for purposes of applying the statute of limitations. *Id.* at 1083. *First*, "[t]he period of time between an unlawful arrest and the institution of legal process forms one constitutional claim, arising under the Fourth Amendment" which "accrues when the plaintiff is released or legal process is instituted justifying that imprisonment." *Id.* "Legal process" occurs "'when, for example, [plaintiff] is bound over by a magistrate or arraigned on charges.'" *Id.* (quoting *Wallace*, 549 U.S. at 389). *Second*, the "period of time between the institution of that process and its favorable termination—through acquittal, habeas corpus, voluntary dismissal, etc.—forms a second claim, arising under the Due Process Clause" which "accrues, at the earliest, when favorable termination occurs." *Id.*

Applying these rules to plaintiff's § 1983 claims, plaintiff's first potential claim—one that arises under the Fourth Amendment for false imprisonment—accrued when "legal process [was] instituted justifying [his] imprisonment." *Id.* The legal process commenced on April 13, 2017, when plaintiff was "arraigned on charges." *Wallace*, 549 U.S. at 389; *see also Wilson v. Reid*, 781 F. App'x 789, 792 (10th Cir. 2019) (holding that "legal process justifying the [plaintiff's] imprisonment was instituted on [the date] [ ] when [plaintiff] was arraigned[ ]"). On April 13, 2017, plaintiff appeared before United States Magistrate Judge K. Gary Sebelius for an initial hearing under Fed. R. Crim. P. 5 and an arraignment. Minute Entry of Rule 5, Arraignment, & Discovery Proceedings, *United States v. McKnight*, No. 17-cr-40020-DDC-1 (D.

---

[2]     Our Circuit also has held that a plaintiff may assert a § 1983 claim for malicious prosecution based on a violation of the Fourth Amendment. *See Sanchez v. Hartley*, 810 F.3d 750, 755 (10th Cir. 2016) (holding that the Tenth Circuit's dictum in *Mondragón* questioning whether a plaintiff may assert a § 1983 claim for malicious prosecution under the Fourth Amendment "does not negate [the Circuit's] more recent pronouncements recognizing such a cause of action under § 1983").

Kan. Apr. 13, 2017), ECF No. 5.³ So, plaintiff's Fourth Amendment claim for false imprisonment accrued on April 13, 2017.⁴ And, because plaintiff filed this lawsuit more than two years later on June 28, 2019, his Fourth Amendment claim for false imprisonment occurring before April 13, 2017 is time-barred. *See, e.g.*, *Wilson*, 781 F. App'x at 792, 792 n.3 (holding that Oklahoma's two-year statute of limitations barred a Fourth Amendment false imprisonment claim brought more than six years after plaintiff's arraignment); *Williams v. City of Tulsa*, No. 11-CV-469-TCK-FHM, 2013 WL 244049, at *7 (N.D. Okla. Jan. 22, 2013) (holding that Oklahoma's two-year statute of limitations barred plaintiff's § 1983 claim under the Fourth Amendment for any period before the date of his arraignments—*i.e.*, his receipt of legal process—because the legal process had begun more than two years before plaintiff filed suit).

But, plaintiff's second potential claim—one asserted under § 1983 for malicious prosecution violating the Fourth and Fourteenth Amendments—was timely asserted. That claim accrued "at the earliest, when favorable termination occurs." *Mondragón*, 519 F.3d at 1083. And, the "favorable termination" of plaintiff's criminal case occurred on January 4, 2019, when the court granted the government's motion to dismiss the case against plaintiff. Order, *United States v. McKnight*, No. 17-cr-40020-DDC-1 (D. Kan. Jan. 4, 2019), ECF No. 72; *see also Myers*

---

³ The court takes judicial notice of the filings in Case No. 17-cr-40020-DDC-1. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (explaining that a court may "take judicial notice of its own files and records" on a motion to dismiss under Rule 12(b)(6) without converting the motion to dismiss into a motion for summary judgment (citations and internal quotation marks omitted)).

⁴ In reaching this conclusion, the court rejects plaintiff's assertion that his false imprisonment claim accrued on September 22, 2017, when the district court denied his motion to suppress. Plaintiff cites no case law supporting his position that the decision denying a motion to suppress constitutes the commencement of "legal process" sufficient to start the limitations clock on a § 1983 false imprisonment claim. *See Mondragón*, 519 F.3d at 1083 (explaining that the limitations clock starts when legal process is instituted justifying plaintiff's imprisonment). And, the court's own research has found no case law supporting plaintiff's assertion either. Instead, the cases cited above hold that legal process justifying the imprisonment begins when the plaintiff is arraigned on criminal charges. So, the court applies those authorities to the facts governing this motion.

*v. Koopman*, 738 F.3d 1190, 1195 (10th Cir. 2013) (holding that plaintiff "properly stated a Fourth Amendment claim for malicious prosecution, which accrued [on the date when the district attorney dropped all charges against him and] when the proceedings resolved in his favor[,]" and which "[h]e timely filed . . . within two years"); *Birdsong v. Unified Gov't of Wyandotte Cty.*, No. 13-2090-JAR, 2014 WL 105509, at *8 (D. Kan. Jan. 10, 2014) (holding that plaintiff's § 1983 claim for malicious prosecution accrued when the state court dismissed the criminal case against him in its entirety); *cf. Mondragón*, 519 F.3d at 1083–84 (holding that the record did not provide sufficient information for the court to apply the statute of limitations to plaintiff's § 1983 claim but recognizing that if plaintiff "did at some point receive legal process for his imprisonment (as a result either of the arrest warrant or of the mysterious mid-August hearing), he has a potential due process claim from that period until his release" which "does not accrue until the process terminates in his favor"). Plaintiff filed this lawsuit on June 28, 2019—well within the two-year statute of limitations governing his § 1983 claims for malicious prosecution violating the Fourth and Fourteenth Amendments. Thus, plaintiff asserted his § 1983 malicious prosecution claims in a timely fashion.

In sum, the court finds that plaintiff has filed timely § 1983 claims, at least in part. Applying the Tenth Circuit's rules governing the accrual of the statute of limitations for § 1983 claims, the court finds that plaintiff has asserted timely § 1983 claims for malicious prosecution violating the Fourth and Fourteenth Amendments. But, to the extent plaintiff asserts § 1983 claims for a false imprisonment violating the Fourth Amendment based on his detention following his arrest until his arraignment on April 13, 2017, that claim is time-barred. *See Williams v. City of Tulsa*, No. 11-CV-469-TCK-FHM, 2013 WL 244049, at *7 (N.D. Okla. Jan. 22, 2013) (holding that plaintiff's § 1983 claim was "not *entirely* time-barred" because his

"Fourteenth Amendment claims for periods of imprisonment following his arraignments" accrued on his release date, which occurred less than two years before he filed his lawsuit, but plaintiff's Fourth Amendment claim for false imprisonment was time-barred for any period before the dates of his arraignments—*i.e.*, his receipt of legal process—because the legal process occurred more than two years before plaintiff filed suit).

The court thus grants in part defendants' Motion to Dismiss on statute of limitations grounds. The court dismisses plaintiff's § 1983 claims to the extent plaintiff asserts a Fourth Amendment violation based on a false imprisonment theory. But the court denies defendants' Motion to Dismiss plaintiff's § 1983 claims for malicious prosecution violating the Fourth and Fourteenth Amendments.

### B. Failure to State a Claim

Next, defendants argue that plaintiff's Complaint fails to state a plausible § 1983 claim against the individual TPD officers. Doc. 13 at 7–8.[5] To state a plausible § 1983 claim on a malicious prosecution theory, a plaintiff must allege: "'(1) the defendant caused the plaintiff's

---

[5] Defendants' Memorandum in Support of their Motion to Dismiss only argues that the Complaint fails to state a plausible claim against the individual officers. Doc. 13 at 7 ("Plaintiff states no facts to support a claim that the individual officers are responsible for Plaintiff's 'unreasonable extended detention.'"). Defendants' Memorandum never argues that the Complaint fails to allege facts supporting a plausible claim against defendant City of Topeka. *See generally id.* It only asserts the statute of limitations argument to support dismissal of the claims asserted against the City of Topeka. *Id.* at 4–5. But defendants' Reply abandons their statute of limitations argument, and, more generally, asserts that plaintiff fails to state a claim for relief for false arrest or malicious prosecution against all defendants. Doc. 17 at 1; *see also id.* at 2 ("The Defendants assert that . . . this case should be dismissed for failure to state a claim."). To the extent defendants' Reply argues that plaintiff fails to allege facts supporting a plausible claim against the City of Topeka, the court disregards that argument because it does not consider arguments raised for the first time in a Reply brief. *Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003) (holding that an argument raised for the first time in a reply brief is waived (citation omitted)); *Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, No. 16-1094-JTM-TJJ, 2018 WL 489100, at *1 (D. Kan. Jan. 19, 2018) ("[T]he Court will not consider arguments raised for the first time in a reply brief, particularly where the arguments could have been made in the first instance."). Nevertheless, as discussed above, the court finds that plaintiff's Complaint alleges facts sufficient to state plausible § 1983 claims against all defendants.

continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.'" *Sanchez v. Hartley*, 810 F.3d 750, 754 n.1 (10th Cir. 2016) (quoting *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008)).

Here, defendants argue the Complaint fails to allege facts capable of supporting a claim that the TPD officers were responsible for plaintiff's "unreasonable extended detention." Doc. 13 at 7–8. Although they never say so explicitly, the court assumes that defendants intend to argue that plaintiff fails to allege facts supporting the first element of a § 1983 claim relying on a malicious prosecution theory.[6] As stated above, this first element requires plaintiff to allege that

---

[6] Defendants' motion never recites the elements of a § 1983 malicious prosecution claim and does not appear to challenge any of the other elements. In any event, the Complaint adequately pleads facts supporting the remaining elements of the claim.

The second element requires that the original action end in plaintiff's favor. Plaintiff alleges that, on January 4, 2019, the court granted the government's motion to dismiss the charges against him and he was released from custody three days later. Doc. 1 at 5 (Compl. ¶¶ 36–37). The third element requires that no probable cause exists to support the original arrest, continued confinement, or prosecution. Plaintiff alleges that the TPD officers lacked probable cause to arrest him. *Id.* at 5, 7 (Compl. ¶¶ 39, 51). Also, plaintiff alleges that the government conceded to the Tenth Circuit that that the district court erred by denying plaintiff's motion to suppress evidence TPD officers discovered incident to plaintiff's arrest because no probable cause existed to support the arrest. *Id.* at 4–5 (Compl. ¶¶ 32–34). The fourth element requires defendant to have acted with malice. Plaintiff alleges that the TPD officers intentionally gave misleading testimony to support the "lurking and prowling" charges against him and, without this testimony, plaintiff never would have been arrested or convicted. *Id.* at 5 (Compl. ¶ 40). Also, plaintiff alleges that the TPD officers acted with indifference and disregard to plaintiff's rights. *Id.* at 6, 7 (Compl. ¶¶ 43, 53). Plaintiff further alleges that the City of Topeka instituted a policy allowing officers to turn off body cameras which they knew TPD officers would "misuse" and produce violations of citizens' constitutional rights. *Id.* at 9 (Compl. ¶ 65). Although plaintiff's Complaint never uses the word "malice," these allegations are capable of supporting a plausible inference of malice. Finally, the fifth element requires plaintiff to sustain damages. Plaintiff alleges that his confinement and prosecution deprived him of liberty and caused him to suffer mental stress, lose relationships, and miss important life events. *Id.* at 6 (Compl. ¶ 44). Also, plaintiff alleges that he lost income and career opportunities and sustained humiliation, indignities, and embarrassment from his incarceration and prosecution. *Id.* (Compl. ¶ 45). These allegations allege facts capable of supporting findings for the remaining four elements of plaintiff's § 1983 malicious prosecution claims.

"the defendant caused the plaintiff's continued confinement or prosecution . . . ." *Sanchez*, 810 F.3d at 754 n.1 (citation and internal quotation marks omitted).

Plaintiff's Complaint alleges that the TPD officers knew that they lacked probable cause to arrest plaintiff. Doc. 1 at 7 (Compl. ¶¶ 50–51). And, it alleges that the TPD officers "intentionally gave misleading testimony" at the August 29, 2017 suppression hearing "to support the charge of lurking and prowling" for which they arrested plaintiff. *Id.* at 5 (Compl. ¶ 40). The Complaint alleges, without the TPD officers' testimony, plaintiff "would not have been arrested and convicted." *Id.* (Compl. ¶ 40).

Defendants argue that plaintiff's allegations about the TPD officers' testimony are conclusory and not supported by any facts. The court disagrees. Viewing the Complaint's allegations in plaintiff's favor, the Complaint alleges that, on the morning of plaintiff's arrest, the TPD officers knew plaintiff was asleep on the ground. *Id.* at 7 (Compl. ¶ 50). Thus, plaintiff contends, the TPD officers knew he "could not be lurking or prowling as a matter of law." *Id.* (Compl. ¶ 50). And, as a result, the TPD officers "lacked any probable cause to believe that [plaintiff] had been or was engaging in any illegal activity to support his arrest." *Id.* (Compl. ¶ 51). But, plaintiff alleges, the TPD officers gave testimony at the suppression hearing "to support" their arrest for lurking and prowling. *Id.* at 5 (Compl. ¶ 40). And, plaintiff alleges, this testimony was misleading. *Id.* (Compl. ¶ 40). Taking these allegations as true and viewing them in plaintiff's favor, the Complaint alleges a plausible inference that the TPD officers' testimony was misleading because, plaintiff claims, the officers knew he was asleep and not engaging in any illegal activity when they arrested him. *Id.* at 5, 7 (Compl. ¶¶ 40, 50–51). And yet, they testified to facts purporting to support probable cause to arrest him. *Id.* at 5, 7 (Compl. ¶¶ 40, 50–51). A plausible inference from these allegations is that the officers' testimony that they

believed they had probable cause to arrest plaintiff for lurking and prowling was unsupported by plaintiff's conduct and the evidence, and thus not a truthful belief. In short, the court finds, the Complaint alleges facts supporting a plausible finding or inference that the TPD officers caused plaintiff's continued confinement or prosecution.

Also, the Complaint's allegations, viewed in plaintiff's favor, support a plausible finding or inference that the City of Topeka caused plaintiff's continued confinement or prosecution. The Complaint alleges that the City of Topeka implemented a policy allowing TPD officers to turn off their body recording devices in certain circumstances. *Id.* at 8 (Compl. ¶ 63). The Complaint alleges that the Chief of Police is responsible for issuing and approving TPD policies—including the body recording device policy—and that the Chief knew or should have known that TPD officers would misuse the policy to deprive citizens of their constitutional rights. *Id.* at 8–9 (Compl. ¶¶ 58, 64–65). The Complaint asserts that this policy caused plaintiff's unlawful arrest and failed to "preserv[e] the true motivation for official police action." *Id.* at 5 (Compl. ¶¶ 41–42). Taking these allegations as true and construing them in plaintiff's favor, the Complaint alleges a factual basis for a plausible inference that the City of Topeka's policy allowing TPD officers to turn off their body recording devices caused plaintiff's continued confinement or prosecution. This, if proved with evidence, could support an inference that the City allowed the TPD officers to conceal the true motivations for plaintiff's arrest—*i.e.*, that they arrested plaintiff for some reason other than sufficient probable cause that he was engaging illegal activity.

The court thus concludes that the Complaint alleges facts sufficient to state plausible § 1983 malicious prosecution claims against all named defendants. And so, the court denies defendants' Motion to Dismiss plaintiff's Complaint for failing to state a claim.

14

### IV. Conclusion

For reasons explained, the court grants defendants' Motion to Dismiss (Doc. 12) in part and denies it in part. The court grants defendants' Motion to Dismiss plaintiff's § 1983 claims to the extent he relies on a false imprisonment theory to make a Fourth Amendment claim because these claims are untimely. But, the court denies defendants' Motion to Dismiss plaintiff's § 1983 claims based on malicious prosecution violating the Fourth and Fourteenth Amendments. As discussed, plaintiff timely filed these § 1983 claims within two years of the court's dismissal of his criminal proceeding. And, plaintiff has stated a plausible § 1983 claim for malicious prosecution.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to Dismiss (Doc. 12) is granted in part and denied in part, as set forth in this Order.

**IT IS SO ORDERED.**

**Dated this 20th day of March, 2020, at Kansas City, Kansas.**

                                                <u>s/ Daniel D. Crabtree</u>
                                                **Daniel D. Crabtree**
                                                **United States District Judge**